BURLINGTON GAS LIGHT COMPANY *v.* BURLING-
TON, CEDAR RAPIDS AND NORTHERN RAIL-
WAY COMPANY.

ERROR TO THE SUPREME COURT OF THE STATE OF IOWA.

No. 178.   Argued January 26, 1897. — Decided February 15, 1897.

The use of the land, the subject of this controversy, being a public use, and
within the authority granted by the original reservation, the extent of
that use is a matter for determination by the public authorities of Bur-
lington, and cannot be restrained by an adjoining lot owner, without
reference to his right to compensation for the injury to his lots.

On July 2, 1836, Congress passed an act, c. 263, 5 Stat. 70,
directing the survey and platting of certain tracts of land in
Iowa into towns, among others the town (now city) of Bur-
lington, the work to be done under the direction of the
surveyor general of the public lands, with a proviso "that a
quantity of land of proper width, on the river banks, . . .
and running with the said river the whole length of said
towns, shall be reserved from sale (as shall also the public
squares), for public use, and remain forever for public use,
as public highways, and for other public uses." This act was
amended on March 3, 1837, c. 36, 5 Stat. 178, by transferring
the duty of surveying, etc., from the surveyor general to a
board of commissioners. Both the original act and its amend-
ment provided for a public sale of the lots as surveyed and
platted. In pursuance of these statutes the town of Burling-
ton was platted, a strip of land two hundred feet in width,
called "Front Street," being left between the eastern row
of lots and the Mississippi River. February 14, 1853, Con-
gress passed an act, c. 67, 10 Stat. 157, granting to the cities
of Burlington and Dubuque "the land bordering on the Mis-
sissippi River, in front of said cities, reserved by the act of
second July, eighteen hundred and thirty-six, for a public
highway, and for other public uses, together with the accre-
tions which may have formed thereto or in front thereof; to

be disposed of in such manner as the corporate authorities of said cities may direct."

The third section provided:

"That the grant made by this act shall operate as a relinquishment only of the right of the United States in and to said premises, and shall in no manner affect the rights of third persons therein, or to the use thereof, but shall be subject to the same."

The plaintiff is the owner of five lots facing on Front Street, holding them by a regular chain of title from the original purchasers at the government sale, and occupying them for its gas manufacturing plant. For many years the defendant, under authority from the city, and apparently without objection, had been using a portion of this open ground between the lots and the river. It had constructed a retaining wall thirty-six feet east of the line of plaintiff's lots, and had graded and used all east of that for tracks, switches and a freight house. Practically, therefore, the plaintiff was left a roadway in front of its lots of thirty-six feet in width. In 1892 the city council passed a resolution authorizing the railroad company to set this retaining wall back fifteen feet, "the space said wall was set back to be used solely for the purpose of a wagon road." The effect of this was to narrow the roadway in front of plaintiff's lots to about twenty feet, the wagon road east of the retaining wall being for approach to a new freight house the defendant was proposing to construct between that space and the river. In pursuance of this authority the railway company commenced to make the excavation and erect the wall. Upon this plaintiff filed its petition in equity in the Des Moines County District Court to enjoin the work. A decree in its favor in the District Court was reversed by the Supreme Court of the State, and one entered dismissing the suit, 91 Iowa, 470, to reverse which decree of dismissal plaintiff sued out this writ of error.

*Mr. P. Henry Smythe* for plaintiff in error.

No appearance for defendant in error.

MR. JUSTICE BREWER delivered the opinion of the court.

The act of 1853 operated to transfer to the city of Burlington the fee to this strip along the river front, together with full control over it, subject only to the laws of the State and individual rights theretofore vested. Indeed, independent of the act it would seem that the United States has no control over the question of the uses to which the strip shall be put. *United States* v. *Illinois Central*, 154 U. S. 225.

The use to which this land was reserved was not that of a highway alone, but "other public uses." This does not mean other public uses similar in character. The rule *noscitur a sociis* does not apply; for under the act of 1836 the reservation is not simply of this strip but of public squares whose use is obviously not of the same character as that of the highway. Indeed, as well said by the Supreme Court of the State, "the fact that the land reserved was two hundred feet wide precludes the idea that it was intended for public travel alone." The further fact that the reservation was of a strip along the Mississippi River — a great navigable waterway — implies that the public uses to which this strip might be put included all public uses which would tend to facilitate commerce on such highway, including therein wharves, storehouses, etc.

Land devoted to the use of a railroad is devoted to public use, and under the settled law of Iowa a common highway may be used by a railroad without further compensation to adjoining landowners. *Barney* v. *Keokuk*, 94 U. S. 324, 341, and cases from the Supreme Court of Iowa cited in the opinion.

The public having control over a highway may determine the manner in which it shall be improved, and, as a general rule, such improvement cannot be enjoined by an abutting lot or landowner, whatever may be his right to compensation growing out of the injury which such manner of improvement may bring to his property. This being true of ordinary highways, *a fortiori* is it true in respect to this property which was not reserved for a highway alone, but for other public uses.

It does not appear that the plaintiff was pecuniarily damaged. The Supreme Court of Iowa said in its opinion that " there is not one word in the evidence showing that the plaintiff would be damaged in any sum of money by the proposed change." Whether there be any damage or not, or whether it be true that the plaintiff, having suffered pecuniary injury, is entitled to compensation therefor, its right, if any, is limited to the matter of compensation, and does not in the absence of constitutional provisions — like those, for instance, found in the constitution of Illinois — entitle it to an injunction to restrain the proposed change.

The use of this strip for railroad purposes being a public use and within the authority granted by the original reservation, the extent of that use is a matter for determination by the public authorities and cannot be restrained by the plaintiff, an adjoining lot owner, whatever may be its rights to compensation for the injury to its lots. We see no error in the decision of the Supreme Court of the State, and it is

*Affirmed.*

MR. JUSTICE PECKHAM dissented.