CHICAGO, BURLINGTON & QUINCY RAILWAY COMPANY v. PETER KELLEY, B. A. DOLAN, WILLIAM BALLINGER, WILLIAM KIEL, TREASURER, and JOHN MENZ, DEPUTY, Appellants.

**Railroads:** TAXATION: *Presumptions.* A tax deed to land owned by a railroad company will not be held invalid, under Code, 1873, sections 1317, 1319, on the ground that it was used exclusively for railroad purposes and assessed by the executive council of the state, merely because the land was so returned by the company, when it does not appear that it was ever assessed by the executive council, as under section 897 there is a presumption that the tax deed was based on a valid assessment, and under prior sections, the executive council is not concluded by the return of the railroad company but may reject property as not coming within the provisions of such section.

NAME OF OWNER. An assessment of land to the "C., B. & Q. R'y" is not sufficient to show that the land is assessed to the Chicago, Burlington & Quincy Railway Company in the absence of proof that it was, at the time, commonly known by such abbreviation.

**Tax sale: Redemption.** The owner of land, having tendered the amount paid by a purchaser at a tax sale, with interest and penalties, will be required to pay the same in order to redeem, though the tax deed is set aside as void.

Notice. One in actual occupancy of part of a lot of land and holding the title to all of it must, under Code, 1873, section 894, be served with notice before a tax deed to the land can be executed.

Same. That the assignee of a certificate of a sale of land for taxes takes possession of part of the land and begins quarrying therefrom does not deprive the owner of the land, who is in actual occupancy of another part, of his possession of such part, nor relieve the former of the necessity of notifying such owner, under Code, 1873, section 894, before obtaining a tax deed to the land.

*Limitation of actions.* The statute of limitations does not begin to run in favor of the grantee in a tax deed of land, where the deed was issued without serving notice on the person in whose name the land was taxed or on the person in possession of the land.

**Partition: Judgment.** One to whom lots bounded by a designated street are awarded in partition proceedings, takes land on the opposite side of the street to the high-water mark of the Mississippi river, subject, only, to the easement for street purposes, where the report of the commissioners which is confirmed by a decree of the court states that the lots upon such street include all the land in front of them, to such river.

*Appeal from Lee District Court.*—Hon. A. J. McCrary, Judge.

Friday, April 8, 1898.

Action to quiet the title of lot 1, in block 8, in the city of Keokuk. Decree as prayed; and defendants appeal. —*Modified and Affirmed.*

*Bernard A. Dolan* for appellants.

*H. H. Trimble, Palmer Trimble, Jas. C. Davis* and *A. Hollingsworth* for appellee.

Ladd, J.—The title to lot 1, in block 8, in the city of Keokuk, was in the heirs of one Hine, in 1869, who conveyed the same to the plaintiff in 1882. Their title,

however, had been divested by a tax deed executed to
George B. Dennison, November 4, 1874, and later by a
tax deed executed to W. B. Collins, April 21, 1881.
Collins conveyed the land to the plaintiff in 1882.
Unless the title so acquired by the plaintiff has been
lost by the tax deeds under which the defendant Kelley
claims, it is entitled to the relief sought. We may then
give our attention to these deeds. The land in contro-
versy was a portion of the "Half-Breed Tract" parti-
tioned in 1839. The report of the commissioners indi-
cates that Water street extends along the meander line
of the Mississippi river, and that all town lots "are
bounded by the middle of the street and alleys upon
which they are situated, and the lots upon Water street
also include all the land in front of them to the
Mississippi river." This report was confirmed
by a decree of the district court of Lee county in
October, 1841. The lot, as it appears on the plat, is one
hundred feet on High street, by fifty on Water street,
and is back 200 feet from the high-water mark. The
evidence shows that a strip of 66 feet wide along the
east line of the lot as platted is Water street, and the
remainder of the land down to high-water mark, being
about 134 feet, has been continuously occupied by the
plaintiff since prior to 1882. Its freight depot, main
line of road, and five switches have been there during
this period, and, until the last few years, its passenger
depot also. That the portion of land between the plat
line and the high-water mark is a part of the lot admits
of no doubt. It is expressly made so by the partition
proceedings referred to. While Water street is within
the city limits, the interest of the public therein is simi-
lar to that in any ordinary highway, being an easment
only. The fee is in the abutting lot owners, in whom
is also that to the high-water mark of the Mississippi
river. *Haight v. City of Keokuk,* 4 Iowa, 212; *Barney*

*v. City of Keokuk,* 94 U. S. 336.   In *Barney's Case* it is
said:    "The original proprietors in dedicating Water
street reserved the title to the soil in the street, and this
title went with the several tracts fronting on the street
and extended to the Mississippi river."    In *Haight's
Case,* Woodward, J., remarked:    By this decree of
partition among the proprietors, those fronting on the
river in like manner own the land—the fee—to the
river."    But the lot as platted, 50 feet by 100 feet, lies
on a precipitous bluff composed of limestone, and was
never actually occupied until 1892, when Kelley began
quarrying limestone there, which work he prosecuted
to some extent up to the time this action was begun.
While the plaintiff actually occupied only that portion
near the river, its deed from Collins conveyed the
entire lot.

II.    For the year 1884 this lot was assessed to
unknown owners, and, the tax remaining unpaid, was
sold to William Ballinger in December, 1885.    Notice
was served January 5, 1889, on J. F. Pollock, general
agent of the Chicago, Rock Island & Pacific Railway
Company, that Ballinger would take a tax deed, and
this he did procure May 4th, following, from the
treasurer of Lee county.    On January 8, 1892,
Ballinger assigned the certificate of sale on
which the deed had been issued to Peter Kelley, who
on November 16, 1892, served notice on Ballinger, to
whom the land was assessed that year, that unless
redeemed within 90 days a tax deed would issue.    On
January 7, 1895, the treasurer executed a tax deed to
Kelley, purporting to correct the one previously issued
to Ballinger.    The tax list of 1888 and 1889 shows this
lot to have been assessed under the name of the
"Owner" to the "C., B. & Q. Ry.," and under the
heading "Remarks" appeared in lead pencil,
"Taxed by executive council."    Notice of the expiration

of the right to redeeem must be served upon the person
in possession and him in whose name the land is taxed,
before the tax deed may be executed. Code 1873, sec-
tion 894. The initials "C., B. & Q. Ry." did not indicate
that plaintiff was intended. *Accola v. Railway Co.*, 70
Iowa, 189. Nor did the evidence show that, at or prior
to the time the tax deed was executed to Ballinger, it
was commonly known and customarily referred to by
that abbreviation. The evidence introduced related to
the time of trial, and does not bring the case within the
rule of *Anderson v. Railway Co.*, 93 Iowa, 561.

4    Neither Pollock nor the Chicago, Rock Island &
Pacific Railway Company was in possession.
But the plaintiff was in actual occupancy of a large
portion of the lot, and held the title to all of it. If in
possession of any part of it, a notice was required under
the statute. *Bradley v. Brown*, 75 Iowa, 180; *Callanan
v. Raymond*, 75 Iowa, 307; *Shelley v. Smith*, 97 Iowa, 259;
*Garmoe v. Sturgeon*, 65 Iowa, 147; *Crawford v. Liddle*,
101 Iowa, 148. The same is true of the deed to Kelley.
The notice was served on the person in whose name the
land was taxed, but not on the plaintiff. That Kelley
began quarrying some time during the same year did
not deprive the company of the possession of the lower
portion of the lot, nor relieve him from the necessity of
notifying it before obtaining its property by tax deed.
There is some evidence tending to show that the road
and depot were the property of the Keokuk & St. Paul
Railway Company, but, as possession was in the
plaintiff, we make no inquiry as to such ownership.
*Bradley v. Brown, supra.*

III.    Defendant asserts that this action cannot be
maintained because more than five years intervened
between the execution of the deed to Ballinger and the
beginning of the action. Code 1873, section 902.

5    The statute of limitation does not begin to run
when the deed is issued without notice being
served on the person in whose name land is taxed.

*Slyfield v. Barnum*, 71 Iowa, 245; *Wilson v. Russell*, 73 Iowa, 395.   The same rule applies where the deed is invalid by reason of the failure to notify the person in possession.   The authority of the treasurer to issue the deed is dependent on the service of the notice.   The deed is not void.   *Bowers v. Hallock*, 71 Iowa, 218. But, as the sale remains incomplete, the period of limitation fixed by the statute will not begin until the sale is perfected.

IV.   The point is made by plaintiff that this lot was used exclusively for railroad purposes and assessed by the executive council of the state.   Code 1873, section 1317.   It is admitted to have been so returned by the company, but there is no evidence of an assessment.   The appellee insists that this will be presumed.   Section 1319 enumerates the property to be so assessed, and it is said that, as officers are presumed to do their duty, this lot must be held to have been included in the assessment of that body.   The objection to such a conclusion is that it ignores the statutory presumption that the tax deed was based on a valid assessment.   Code 1873, section 897.   The executive council is not concluded by the return of the railroad companies, and may reject property as not coming within the provisions of Code 1873, sections 1317, 1319.   To defeat the payment of taxes levied on assessments made by the local authorities, not the return, but another valid assessment, must be shown.   This was not done.

V.   The plaintiff tendered the amount paid by Ballinger at the tax sale, with interest and penalties, and these it will be required to pay in order to redeem.   With this modification the decree will be affirmed. — Modified and Affirmed.