UNITED STATES of America, Appellant,

v.

STATE OF WASHINGTON, Appellee.

No. 17006.

United States Court of Appeals
Ninth Circuit.

Sept. 1, 1961.

Ramsey Clark, Asst. Atty. Gen., Roger P. Marquis and George S. Swarth, Attorneys, Dept. of Justice, Washington, D. C., and Charles P. Moriarty, U. S. Atty., Seattle, Wash., and Charles W. Billinghurst, Tacoma, Wash., Asst. U. S. Atty., for appellant.

John J. O'Connell, Atty. Gen., E. P. Donnelly, Sp. Asst. Atty. Gen., H. T. Hartinger, Asst. Atty. Gen., for appellee.

Before CHAMBERS, ORR and HAMLEY, Circuit Judges.

HAMLEY, Circuit Judge.

The United States brought this action against the State of Washington and others to quiet its title, subject to the rights of the heirs of Samson Johns, to accretions adjacent to ocean uplands owned by plaintiff. Judgment was entered quieting title in the United States, subject to the rights of the heirs of Samson Johns, to all accretions formed prior to November 11, 1889, when Washington became a state, and in the State to all accretions formed since that date. The dividing line between such accretions was held to be the line of ordinary high tide, defined as that line which the water had impressed on the soil as of November 11, 1889, by covering it for sufficient periods to deprive the soil of vegetation and destroy its value for agricultural purposes. The Government appeals.[1]

The material facts are not in dispute. Lots 3 and 4 of section 15 in township 18 north of range 12 west of the Willamette Meridian, adjacent to the Pacific Ocean in Grays Harbor County, Washington, belong to the United States, subject to a trust patent issued in 1916 to Samson Johns, a Quinault Indian, now deceased. As now extended, the trust period will expire in 1966. Samson Johns died in 1930, and his heirs have continued to reside on the property.

The lots were at all times part of the public domain until patented to Samson Johns. In 1858 they were surveyed by the General Land Office, which established a meander line along and adjacent to the Pacific Ocean. Since 1858 the ordinary high-water mark in front of the lots has moved gradually seaward due to imperceptible accretion. On November 11, 1889, Washington was admitted to the Union as a state.

In holding that under the circumstances of this case the boundary between government-owned uplands and state-owned tidelands is the ordinary high-water mark as it was when Washington was admitted to the Union, the district court applied what it understood to be the local rule of property established in the state of Washington.[2] The

---

1. Jurisdictional aspects of this litigation were dealt with in United States v. Gas & Oil Development Co., D.C., 126 F. Supp. 840, reversed sub nom. United States v. State of Washington, 9 Cir., 233 F.2d 811.

2. The district court's opinion on the first trial dealt with this question by way of dictum solely by reference to state statutes and state decisions, the court stating its prediction as to how the Washington Supreme Court would answer the ques-

Government contends that federal law instead of state law should have been applied, and that under federal law the title to the accretions must be held to be in the United States, subject to the Samson Johns trust patent.

In urging that federal law controls, the Government relies primarily upon the holding in Borax Consolidated, Ltd. v. City of Los Angeles, 296 U.S. 10, 56 S.Ct. 23, 80 L.Ed. 9. In that case, Borax Consolidated, claiming as upland owner under a federal patent, brought an action to quiet title to land alleged to be tideland situated in the inner bay of Los Angeles Harbor. It was apparently agreed that the company's land extended to the high-water mark, but there was controversy as to how this mark was to be determined. Declining to be bound in its determination by the definition of the term "ordinary high-water mark" under California law, the court said:

"The question as to the extent of this federal grant, that is, as to the limit of the land conveyed, or the boundary between the upland and the tideland, is necessarily a federal question. It is a question which concerns the validity and effect of an act done by the United States; it involves the ascertainment of the essential basis of a right asserted under federal law. Packer v. Bird, 137 U.S. 661, 669, 670 [11 S.Ct. 210, 34 L.Ed. 819]; Brewer-Elliott Oil [& Gas] Co. v. United States, 260 U.S. 77, 87 [43 S.Ct. 60, 67 L.Ed. 140]; United States v. Holt [State] Bank, 270 U.S. 49, 55, 56 [46 S.Ct. 197, 70 L.Ed. 465]; United States v. [State of] Utah, 283 U.S. 64, 75 [51 S.Ct. 438, 75 L.Ed. 844]. Rights and interests in the tideland, which is subject to the sovereignty of the State, are matters of local law. Barney v. Keokuk, 94 U.S. 324, 338 [24 L.Ed. 224]; Shively v. Bowlby, supra [152 U.S. 1], [at] p. 40 [14 S.Ct. 548, 38 L.Ed. 331]; Hardin v. Jordan, 140 U.S. 371, 382 [11 S.Ct. 808, 35 L.Ed. 428]; Port of Seattle v. Oregon & Washington R. Co., 255 U.S. 56, 63 [41 S.Ct. 237, 65 L.Ed. 500]." 296 U.S. at page 22, 56 S.Ct. at page 29.

No question of accretions was involved in Borax, the problem being the ascertainment of the boundary between the upland and tideland as it existed at the time the company received its patent. But the principle there announced is equally applicable where the problem is one of determining whether imperceptible accretions go with the upland. If the upland owner is entitled to the imperceptible accretions it is because this is an attribute of title reserved to or obtained by grant from the Government. Thus the determination of the attributes of an underlying federal title, quite as much as the determination of the boundaries of the land reserved or acquired under such a title, "involves the ascertainment of the essential basis of a right asserted under federal law."

Appellee cites a number of decisions which in its opinion call for the conclusion that state law governs under the circumstances of this case. One of these is Barney v. City of Keokuk, 94 U.S. 324, 337–338, 24 L.Ed. 224, in which the question concerned the ownership of land created by an artificial fill in the bed of a navigable river. The court applied federal law to the extent of determining that, no accretions being involved, the tidelands belonged to the state in its sovereign capacity and it was free if it chose but was not required to relinquish any part thereof to the upland owner.[3]

tion if confronted with it. United States v. Gas & Oil Development Co., supra, 126 F.Supp. at pages 844–845. The district court reached the same conclusion on the second trial without writing a further opinion.

3. Indicating that state law controls on the question as to who may benefit from sudden accretions but not as to who may benefit from imperceptible accretions, the court said:

"It is generally conceded that the riparian title attaches to subsequent accretions to the land effected by the gradual and imperceptible operation of natural causes. But whether it attaches to land

The same result was reached in City of St. Louis v. Rutz, 138 U.S. 226, 11 S.Ct. 337, 34 L.Ed. 941, also cited by appellee. In neither of these cases was imperceptible accretion involved; in both the court indicated that had it been involved a different result would have been reached.

Joy v. City of St. Louis, 201 U.S. 332, 26 S.Ct. 478, 50 L.Ed. 776, relied upon by appellee, did not involve lands in which the United States or its grantee held or claimed title. It involved riparian lands, the title to which was based on a Spanish concession and confirmatory acts of Congress. The circuit court held it was undisputed that the federal statutes merely confirmed whatever title Spain had given; thus the extent of the title was not a federal question and the case was dismissed for lack of jurisdiction. Joy v. City of St. Louis, C.C., 122 F. 524. The Supreme Court affirmed, stating that under these circumstances the plaintiff's right to the accretions was a question of local law. 201 U.S. at page 342, 26 S.Ct. 478.

Ker and Company v. Couden, 223 U.S. 268, 32 S.Ct. 284, 56 L.Ed. 432, and Zeller v. Southern Yacht Club, 34 La. Ann. 837, cited by appellee, did not involve lands the title to which was held by or derived from the United States. The Ker case arose in the Philippine Islands and involved accretions which under Spanish law became a part of the public domain of Spain. The United States, as successor to Spain, was held under Spanish law to have title to the accretions and the claim of the riparian owner, who did not derive title from the United States, was on that ground rejected. The Zeller case involved accretions to the uplands bordering Lake Ponchatrain in Louisiana. The controversy was between private parties and the opinion does not indicate that the

reclaimed by artificial means from the bed of the river, or to sudden accretions produced by unusual floods, is a question which each State decides for itself." 94 U.S. at page 337.

Government had ever held title to either the uplands or shorelands.

Appellee has cited Western Pac. Ry. Co. v. Southern Pac. Co., 9 Cir., 151 F. 376, in which the company, holding by mesne conveyances from the state a strip of land between the high and low tide lines in San Francisco Bay, claimed by right of accretion a subsequently filled area extending farther seaward. The court rejected the claim. No riparian title held by or derived from the United States was involved and there was accordingly no occasion to invoke federal law.

Port of Seattle v. Oregon & Washington R. Co., 255 U.S. 56, 41 S.Ct. 237, 65 L.Ed. 500; Mann v. Tacoma Land Co., 153 U.S. 273, 14 S.Ct. 820, 38 L.Ed. 714; and Shively v. Bowlby, 152 U.S. 1, 14 S. Ct. 548, 38 L.Ed. 331, all cited by appellee, involved the rights of riparian or littoral owners in and to tidelands. Since title to tidelands is in the state, the rights of riparian or littoral owners therein were properly held to present a question of local law. The right of an upland owner as an attribute of his title to imperceptible accretions along the shoreline was not involved.[4]

During oral argument appellee called our attention to St. Anthony Falls Water-Power Co. v. Board of Water Comm'r, 168 U.S. 349, 18 S.Ct. 157, 42 L.Ed. 497. The controversy there was as to the right of riparian owners to the use of the waters flowing by their property. No question of accretions was involved. State law was properly held to govern.

None of the cases relied on by the State detract from the principle announced in Borax Consolidated, Ltd. v. City of Los Angeles, 296 U.S. 10, 56 S.Ct. 23, 80 L.Ed. 9, which in our opinion requires that the question of whether imperceptible accretions go with the upland be

4. In Shively the court indicated that if the question involved title to gradual accretions, the general common-law rule, which is the federal rule would have governed. 152 U.S. at page 35, 14 S.Ct. 548.

834

determined in accordance with federal law when title to the uplands is in or derived from the federal government.

It is not here disputed that if, as we have held, federal law governs the question of title to the accretions, the determination must be in favor of the uplands held by the United States, subject to the rights of the heirs of Samson Johns.

█ The common law is the source of the tideland title which the United States held and which passed to the State of Washington when it was admitted to the Union. Federal law follows the common law in determining the measure of the title to lands retained by the United States. The Supreme Court has implicitly so recognized.[5] At common law the person whose land is bounded by sea, lake or river owns any additions thereto resulting from imperceptible accretion.[6]

█ In the case of tidal waters such as are involved here, the high-water mark means the line of high water as determined by the course of the tides, not as determined by physical markings made upon the ground by the water. The latter method of making this determination, which was followed by the district court, is appropriate only in the case of streams and other nontidal waters which have no absolute ascertainable level because of variations of flow from a multitude of causes.

█ As was testified to for the Government by the supervisor of the Northwest District of the United States Coast and Geodetic Survey, the definition of mean high tide is the average elevation of all high tides as observed at a location through a complete tidal cycle of 18.6 years. Borax Consolidated, Ltd. v.

City of Los Angeles, supra, 296 U.S. at pages 26–27, 56 S.Ct. 23, 80 L.Ed 9. This is an unchanging elevation, and the line of mean high tide is where that unchanging elevation meets the shore as it exists at any particular time.

The judgment is reversed.

CHAMBERS, Circuit Judge (concurring).

As the district court thought, I think the question of the line of the title ought to be decided by state law. But as I read Borax Consolidated, Ltd., v. City of Los Angeles, 296 U.S. 10, 56 S.Ct. 23, 80 L.Ed. 9, I think the road sign points to the line being treated as a federal question. So, I concur.

5. See Borax Consolidated, Ltd. v. City of Los Angeles, supra, 296 U.S. at page 22–23, 56 S.Ct. 23; Jefferis v. East Omaha Land Co., 134 U.S. 178, 194–197, 10 S.Ct. 518, 33 L.Ed. 872; Barney v. City of Keokuk, 94 U.S. 324, 24 L.Ed. 224; County of St. Clair v. Lovingston, 23 Wall. 46, 90 U.S. 46, 68–69, 23 L. Ed. 59.

6. Shively v. Bowlby, supra, n. 5, 152 U.S. at page 35, 14 S.Ct. 548, 38 L.Ed. 331;

Jefferis v. East Omaha Land Co., supra, 134 U.S. at page 189, 10 S.Ct. 518, 33 L.Ed. 872; Barney v. City of Keokuk, supra, 94 U.S. at page 337, 24 L.Ed. 224; County of St. Clair v. Lovingston, supra, 23 Wall. at page 68, 90 U.S. at page 68, 23 L.Ed. 59; Jones v. Johnston, 18 How. 150, 59 U.S. 150, 156, 15 L.Ed. 320; Mayor, Aldermen and Inhabitants of New Orleans v. United States, 10 Pet. 662, 35 U.S. 662, 717, 9 L.Ed. 573.