The opinion of the court was delivered by
Watkins, J.
This is an action of jactitation or slander of title, the plaintiff alleging possession of and a legal title to the land in controversy; and the defendants justifying under a superior title, and also alleging possession of parts of the territory which is alleged to be covered by and included in the calls of the plaintiff’s patent — each party alleging the slander of the other’s titles and claiming damages of the other. Havard vs. Atkins, 24 An. 511; Clarkston vs. Vincent, 32 An. 613; Dalton vs. Wickliffe, 35 An. 355; Gay vs. Ellis, 33 An. 249; Sully vs. Spearing, 40 An. 558.
The tenor of these decisions is that in such an action as this the defendant carries the burden of clearly establishing his claim to the property in dispute, having alleged ownership and possession. In such an action he is bound to succeed on the strength of his own title and not upon the weakness of his adversary’s.
Both parties found their claims of ownership upon patents, though of different dates — that of the plaintiff bearing date 10th of November, 1890, and those of the defendants in May and June, 1893— and all bearing the signature of the Governor and Register of the Land Office.
The description of the land which was purchased by the plaintiff, which was evidenced by the patent that issued to the plaintiff, is of the following tenor, viz.: “All the unsurveyed marsh west of lots fronting on the right bank of the Mississippi, except section No. sixteen (16), in township twenty-two (22) south, of range thirty-one (31) east, in the Southeastern, west of the river, Land District, containing thirty-eight hundred and forty (3840) acres, according to the official plat of the survey of said lands in the. State Land Office.”
The number of the patent is 4058, and it states that the purchase was made with certificate No. 2251 N. S. L.
The plaintiff’s petitions, original and supplemental, when taken together, contain the same description as that in the patent, and it alleges his possession and ownership of the whole of said lands, the slander of his title by August F. Leovy and H. J. Leovy, and the resulting damages, and his prayer is for citation and judgment sus- *1662 taming and perpetuating his injunction restraining them from entering on said premises and from further slandering and disavowing his title and for two thousand dollars damages.
The answer of the defendant, H. J. Leovy, is to the effect that the land claimed by the plaintiff and called for by his patent was entered according to an official plat or survey made by G. F. Connelly in 1836 (and) was all within a distance of less than two miles of the Mississippi river, and all territory to the west of that was, at the date of that survey, and by the plat by which White claims to have bought, West Bay.
“ That a few years after Connelly made said survey the Jump outlet broke through, and the accumulation on the seaward side of said marsh and in said bay gradually raised the bed of said bay until the whole of said West Bay became marsh land connecting with swamp land to the westward, and at the time of said lands being transferred to the State in 1849 and 1860 by Congress, it was not a navigable bay or part of the sea.”
The answer then charges that the plaintiff, well knowing all these facts and endeavoring to perpetrate a fraud upon the State, “ entered the lands originally allotted by Connelly, and under his patent, 4068, is endeavor ng to claim over sixteen thousand (16,000) more acres in said township” than he is entitled to claim thereunder; and by “a malicious suit now seeks to cast a cloud upon the title of others who have entered the western lands in said township * * honestly and according to law, and who are in the peaceable and undisturbed possession of same.”
The defendant denies the allegations of slander contained in the plaintiff’s petition; and assuming the character of plaintiff in recon-vention he avers that he has acquired by purchase a large body of land lying and being situated in said township twenty-two, and for which he holds patents from the State, and of which he is now, and has been since the issuance of said patents, in the actual and peaceable enjoyment and possession; and that, notwithstanding that fact, the plaintiff has wantonly and maliciously slandered his title thereto and has thereby occasioned him damages.
The prayer of his answer is in conformity with the aforesaid aver-ments — demanding damages, the issuance and perpetuation of an injunction against the plaintiff.
*1663 The answer of the other defendants is quite similar to that of their codefendant H. J. Leovy.
In limine litis the plaintiff’s counsel filed an exception and motion to strike out a portion of the defendants’ answers on the ground that the official plat of survey of G. F. Connelly, United States Surveyor, made in 1836, and on which his patent was based, can not be questioned or impeached by the defendant; and this court is wholly without jurisdiction to determine whether same is or not erroneous. And that the said patent can not be questioned or impeached by the defendants for fraud or error.
That the United States government, as the owner of the sea marsh adjacent to the seashore and to West Bay, “ acquired all the alluvion made by accretion to said lands between the years 1836 and 1850; and when said lands were granted by the United States government to the State of Louisiana, same passed to the State by the granting act of Congress; and that same passed to the plaintiff as patentee thereof, and that he acquired all of said lands, as well as the accretions which xoere added thereto, as they were at the time they were granted by the United States to the State of Louisiana,” said granting act passing a fee simple title in presentí to the State, not only as the land was,'at the iime of the survey by Connelly in 1836, but as it was. at the date of the grant; and that the whole was acquired by thé plaintiff as patentee.
His additional representation is, that the plaintiff, as patentee, “acquired all of said land in township No. 22 south, range No. 31 east, on the southeastern, west of the river, land district, according to the official survey of said lands in the State Land Office, as they were /'at the time they were granted by the United States to the State of Louisiana.”
That the patent issued to the plaintiff evidences a contract between the State and the plaintiff, and that, consequently, the Staté could not lawfully grant same subsequently to H. J. Leovy, or other persons, or any portions thereof, “ in said township; ” and by so doing, or in attempting to do so, as the defendant Leovy contends; she has attempted to impair the obligation of her contract, and to deprive him of his property without due process of law. That the patents issued to the defendant, H. J. Leovy, were- made and issued subsequent to the issuance of patent No. 4058 to the plaintiff; and that the lands therein described are embraced in and covered by the *1664 patent of the plaintiff aforesaid, previously issued; and, therefore, the patents of the said defendant are illegal, null and void; and that the State of Louisiana in issuing said subsequent patents to the defendant, Leovy, sought to impair the obligation of the contract, which she had previously made and entered into with the plaintiff as represented by said patent 4068, and attempted thereby to deprive him of his property without due process of law.
Based upon the foregoing averments the prayer of said motion is, “ that, the portion of defendant’s answer and plea in reconvention alleging error in the official plat and survey made by G. F. Connelly in 1886; or any change in the nature and character of the marsh west-of-lots fronting on the right bank of the Mississippi, in township twenty-two south, range thirty-one east, in the southeastern, west of the river, land district, according to the official survey of said lands, in the State Land Office, by accretion or otherwise; also, all averments of fraud contained in said answer and plea in reconvention; and, also, all averments of defend:’' it’s setting up title to any of said lands, under patents subsequent to tL it of the plaintiff ” be stricken out and all evidence thereof “ be excluded, rejected and disallowed.”
Upon this exception and motion to strike out, but which possesses many of the elements of a supplemental petition, or replication to the answer and reconventional demands of the defendants, the District Judge made the following ruling, viz.:
1. That the portion of defendant’s answer alleging error on the official plat and survey of Connelly in 1836, “ or any change in the nature and character of the marsh west of the lots fronting on the right bank of the Mississippi river in township 22 south, and range 31 east, etc. * * * and all the averments of fraud ” contained therein, be stricken out, and all evidence thereof be excluded and disallowed.
2. “That the defendants be allowed to show by proper evidence that they have a better and superior title than plaintiffs to the sections in the township claimed by them.”
But, in the course of his reasons for judgment the judge expressed the opinion that patents for land can only be impeached for fraud in their issuance at the seat of government; but that “ the question as to whether or not, when the plaintiff obtained his patent to this land, there was more than the number of acres mentioned therein, *1665 and the question of accretion ought to be decided on the merits of the case. And so, also, is the question as to whether possession of part of a tract of land with a title to the whole, if any, is possession of the whole.”
To this' ruling and opinion of the judge a quo the defendants urged objections, and a bill of exceptions was retained thereto by them.
Reduced to a last analysis the pleadings present for our consider— ation and decision a purely petitory action, in which the defendant holds the affirmative side of the controversy, and is bound to succeed on the strength of his own title; and in deciding the question of title, we are to determine whether the patents which the State issued to H. J. Leo'vy in 1893 reflect a title which is superior and-paramount to the patent which the State issued to the plaintiff in 1890 — to the extent that they conflict.
This controversy is not so much with regard to the character or strength of the respective patents as it is with regard to the area or domain which the State actually and really conveyed to the plaintiff; for it is quite true, and can not be denied, that the State was wholly without power to convey to tne defendant, H. J. Leovy,. any land in 1893 which she had previously sold to the plaintiff in 1890, without trenching upon the issues of error or fraud which were excluded from consideration. In other words, we are to determine from the evidence before us whether the plaintiff’s patent covers and includes all the land in township twenty-two south, of range thirty-one east, in the southeastern land district west of the' Mississippi river; for, if it does, in fact, the patents which were subsequently issued to the defendant, H J. Leovy, do not reflect a paramount title thereto.
But in so deciding, we are at liberty to examine and determine whether there was a greater number acres of land than are described in the plaintiff’s patent, and the question of accretion also.
The judge below prepared an elaborate and very well considered written opinion on the merits, in which his views are well stated, and upon which his judgment in favor of the plaintiff is founded, and from which the defendants appealed.
A fair analysis of his opinion is to the effect that the Connelly survey in 1836 extended only to the lots of land which are therein designated as fronting on the Mississippi river, and did not embrace *1666 any part of the sea marsh adjacent thereto, and that the evidence clearly shows that the sea marsh has never been since that date surveyed by any one.
That the official plat of the Oonnelly survey merely locates the township, and exhibits its two corners, and the area of the front lots; but that it does not show that either the township or the section lines thereof were traced or established in any way.
That it is an irrefutable fact that the land which was patented to White was never surveyed, and that there can be no official plat of the survey of unsurveyed land. That in consequence of the sea marsh in question never having been surveyed, the phrase in the patent of the plaintiff, to-wit: “ according to the official plat of the survey of said land in the State land office,” was meaningless, and consequently the statement in the patent “containing 3840 acres,” only meant that the supposed area of the sea marsh was estimated to contain that quantity of land.
The opinion then declares that the evidence does not show that the plaintiff acquired a greater quantity of land than his patent called for; that nearly the whole township is cut up by innumerable bayous, passes and a few navigable streams.
The following extract from the opinion states the judge’s conclusions very tersely, viz.:
“White testifies on page 10: ‘ It is a partial township; has 12,000 or 16,000 acres in area, nine-tenths being water.’ His testimony stands uncontradicted. But if White has acquired more land than he paid for, the State, yes even the sovereign under due form of government;, could not depzdve him of that excess without due process of law. Whoever, by virtue of a public position under a State government, deprives another of his property without due process of law, violates the constitutional inhibition and his act is that of the State.
“ White did not purchase by sections, and the excess, if any, has never been established by any authorized survey. How then could the State lawfully convey by patent to defendant, sections in a township whose sectional lines were never run, and which lands in said township had previously been sold to plaintiff.
“In the sale of public lands the government and its purchasers are governed by the same principles which apply to individual vendors and vendees.
*1667 “ The State should have first sued White for the supplement of the price.
“The State alone could do so, as in the Buck case, but a second patentee could not be vested with that power. If there exists an •extent of more than what is specified in the contract the buyer has a right either to give the supplement of the price or to recede from the contract. R. 0. 0. 2493.
“ In all cases where the buyer has the right to recede from the ■contract the seller is bound to make him restitution not only of the price, but also of the expenses occasioned by the contract. R. 0. 0. 2497.
The evidence shows that Leovy obtained patents for sections and fractional sections in T. 22 S., R. 31 E., covered by plaintiff’s patent issued three years previously.
“A second patentee can not be heard to impeach the prior patent for any fraud committed by the grantee against the State, or any mistake committed by its officers acting within the scope of their authority.
“ Counsel for defendant strenuously contend that White’s title is ■entirely null and void on its face, because every statute of the Louisiana Legislature requires that public land be sold by sections and fractional sections with a specified number of acres in each section. Brief, p. 22.
“ Reference to Act 75 of 1880, entitled an act.to readjust the State land office, etc., makes it clear to my mind that counsel are in error. Sec. 11 reads as follows:
“ That the public lands donated by Congress to the State of Louisiana, designated as sea marsh or prairie * * * shall be subject to entry and sale at the rate of twelve and one-half cents per acre.
“ Section 3. That it shall be the duty of the register to keep •accounts of the sales of land donated to the State in well-bound books * * * setting forth the sections, townships and range, •district and parish, to whom and when sold, and for what price.
“White purchased under this act. He bought all the unsurveyed marsh in Township 22 south, Range 31 east, except Section 16. He purchased in good faith from the State, the sovereign,'through its ■duly accredited representatives. If the sections above quoted, upon which counsel for defendants rely, require or exact the register to ■sell public lands of this nature by sections or fractious of sections, I *1668 am of the opinion that the sale to White could be annulled only by the State in a direct action and that it can not be attacked collaterally. Defendant is not vested with the power of the State in this respect*
“Furthermore, in the Buck case, whose patent counsel for defendants allege was identically the same as the patent- in this case (Brief r page 5), the Supreme Oourt declared that Buck’s title to the land-conveyed in his patent was good. His purchase was not by sections. I desire to reiterate that the evidence shows most positively and conclusively that the sectional lines of this township have never-been run, nor have any sections or fractions of sections been surveyed so as to locate them by any official survey.
“The evidence shows that White was in actual possession of the land covered by his patent. Actual possession of a part is actual possession of the whole.
“The patent appears to me clear, absolute and unmistakable in terms. It is plain and unambiguous in language and evident in meaning.
“Viewed in connection with the receipt of the register, which-shows that White paid $534 for the entry of all the unsurveyed sea marsh in this township, and the evidence adduced on the trial of this-case, it can not admit of any other construction; any other interpretation would be to destroy.its purpose and object.
“I have gone over this case very thoroughly and made a careful analysis of authority on the issues involved herein. I appreciate the importance of this case, and, after a careful examination of the question in all its bearings, I have reached the conclusion that plaintiff’s title to the land described in his petition is good, perfect and complete, and that he should be maintained and quieted in his possession thereof.
“For the reasons herein assigned, it is ordered, adjudged and decreed that there be judgment in favor of plaintiff and against defendant, declaring that they and each of them have slandered plaintiff’s title to the land described in plaintiff’s petition, to-wit: All the unsurveyed marsh west of lots fronting on the right bank of the Mississippi river, except Sec. 16, in Township 22, South Range No. 31, extending in the southeastern west of river land district, containing three thousand eight hundred and forty acres; and that plaintiff be maintained and quieted in his possession thereof.
“It is further ordered, adjudged and decreed that the writ of *1669 ¡injunction ¡herein issued at plaintiff’s instance be maintained and perpetuated, and that the reconventional demand of defendants be ■rejected and the injunction issued at the instance of Henry J. Leovy be dismissed with costs.”
• Recurring to the evidence in the record and the maps, plans, -diagrams, field notes, etc., appended thereto and brought up in the original, we find the following data pertinent to the isjues formulated supra.
The first one which attracts attention is the character of the receipt which the register gave to R. M. White for the money he -paid for the land in question, and which is of the following tenor, viz.:
“ Baton Rough, August 27, 1890.
“Received of R. M. White, Esq., the sum of five hundred and thirty-four dollars for the entry of all the unsurveyed sea marsh in T. 22, S. R. 81 E., Southeastern District, west of the Mississippi river. This matter to be submitted to the Attorney General of the State, and if in his opinion said land can be entered, then patent is to issue to him; otherwise the money is to be refunded to him.”
Inasmuch as the plaintiff’s patent No. 4058 bears date of issuance the 10th of November, 1890, and states that the patentee purchased with certificate No. 2251 N. S. L. of same date, it is evident that -ample time for consideration was taken, for the purpose, doubtless, of obtaining the advice of the Attorney General; and the strong likelihood is, that in issuing patent 4058 the register conformed his action to that advice. And while it undoubtedly does appear from said receipt that the plaintiff had made an application to purchase all the unsurveyed sea marsh in township twenty-two aforesaid, we are to consider whether or not there are other recitals in the patent which, in any way, modify or limit the extent of the purchase which he really and actually made.
There is a fact disclosed by the receipt and patent 4058, when considered together, which conclusively shows that during the interval which occurred between the two dates a change had taken place with reference to the entry; and that fact is, that notwithstanding White contemplated, at the time of depositing the money with the register, the purchase of all the unsurveyed marsh in the aforesaid township for the round sum and price of five hundred and thirty-four dollars, he actually bought three thousand eight hund,red *1670 and forty acres, presumably for twelve and a half cents per acre,, which aggregated only four hundred and eighty dollars.
An examination of the various documents, plans and maps which were brought up in the original shows the following facts and datai
The certified copy of the approved list No. 1, exhibiting the area of swamp lands which was granted by Congress to the State in 1849 and 1850 — which is authenticated by the certificate of the commissioner of the general land office at Washington — shows identically the same description of the sea marsh in township twenty-two aforesaid, as that given in patent of the plaintiff, 4058.
The field notes of the survey which was made by G. P. Connelly, deputy U. S. surveyor, which included the township twenty-two aforesaid, show that the same was made in March, 1836, and approved by the Surveyor General, Williams, on June 27, 1836. An exemplification from the map of said survey shows that the aforesaid field notes were examined and approved by the surveyor general, Newcomb, on December 8, 1842, and were filed in the general land office at Washington, on June 11, 1843.
That map, as well as the field notes, shows that the area of land actually surveyed was only a narrow strip which fronted on the Mississippi river and extended back to a marsh in the rear; and that notwithstanding they are therein mentioned as sections, one to thirty-six inclusive, same are small lots of irregular shape and dimensions, and only containing from two to thirty-six acres each, and equal only to five hundred and twenty-five and seven one hundredths acres in all.
A sketch of said township and other lands made by William Bed-ford, deputy surveyor, in 1892, shows that the strip of land which Connelly surveyed in 1836 commences in section 1 and traverses, diagonally sections 1, 12, 13, 24, 25 and 36.
A certified extract from the map of Connelly’s survey, which was made by Lanier, register, on June 2, 1893, has thereupon traced, immediately in front of the portion representing the front or surveyed lots, and extending the full length thereof, the following endorsement, viz.:
■ “ Marsh.
“Certificate No. 2251, N. S. L.
“ Robert M. White, Patent 4058, Vol. 27, p. 33.”
And there is, also, indicated upon that extract, at a short distance- *1671 from said lots,' by a heavy red line, which is traced somewhat irregularly from north to south, what appears to be the area of the space representing the “marsh ” which the plaintiff acquired under patent 4068,. and which he purchased, or located, with “ certificate No. 2251, N. S. L.;” and beyond that line, to the west, is written, in large letters, the words “ West Bay.'1'1
A certified extract from the Connelly map, which was made in the office of the Surveyor General on July 20, 1888, exhibits the same condition of things, but without the aforesaid endorsement.
Prior to the date of the making of either of those extracts, from the map of Connelly’s survey, the defendant, H. J. Leovy, made the followirg locations or purchases of lands in the aforesaid township, and patents therefor were issued to him:
On May 1,1893, Patent 4868, Secs. 4 and 5, one thousand two hundred and eighty acres; on May 3, 1893, Patent 4871, Sec. 6, six hundred and forty acres; on May 3, 1893, Patent 4872, west one-half Sec. 9, three hundred and twenty acres; on May 3, 1893, Patent 4873, east one-half Sec. 8, three hundred and twenty acres; on May 3, 1893, Patent 4874, east one-half Sec. 17, three hundred and twenty acres; on May 3, 1893, Patent 4875, east one-half See. 20, three hundred and twenty acres; on May 3, 1893, Patent 4876, east one-half Sec. 29, three hundred and twenty acres.
It will be observed, by comparing the foregoing list with the maps of the Connelly survey, that section six (6) is the extreme northwestern section in the aforesaid township twenty-two (22) ; and that sections five (5), eight (8), seventeen (17), twenty (20) and twenty-nine (29) extend from the northern boundary line of the township due south — each one immediately above the other — and that sections four (4) and nine (9) immediately adjoin the head of the column on the east.
A glance at the township map discloses the fact to be that there is an intervening space of more than two miles square, between the upper limit of. the Connelly survey and the eastern boundary line of section four (4) ; and an intervening space of more than three miles square between the entire eastern limit of sections eight (8), seventeen (17), twenty (20) and twenty-nine (29) and the western limit of the Connelly survey.
It further discloses that the sea marsh and West Bay, as same are thereon delineated, intervene between those two boundaries.
*1672 On the day previous to the preparation of the aforesaid extract which tberregister caused to be prepared from, the map of the Con-nelly survey, the defendant, H. J. Leovy, made the following locations or purchases of lands in the aforesaid township, and patents therefor were issued to him:
On June 1, 1893, Patent 4924, east one-half of Sec. 9, three hundred and twenty acres; on June 1, 1893, Patent 4925, southwest one-quarter Sec. 10, one hundred and sixty acres; on June 1, 1893, Patent 4926, west one-half Sec. 15, two hundred and twenty acres; on June 1, 1893, Patent 4927, east one-half northwest one-quarter, on June 1, 1893, Patent 4927, west one-half of northeast one-quarter, and on June 1, 1893, Patent 4927, west one-half of southeast one-quarter Sec. 22, two hundred and forty acres; on June 1, 1893, Patent 4928, east one-half of Sec. 27, three hundred and twenty acres; on June 1, 1893, Patent 4929, northeast one-half Sec. 84, one hundred and sixty acres.
■ We find from the foregoing that H. J. Leovy entered or purchased with certificates, lands in the aforesaid township twenty-two (22), aggregating five thousand and forty (5040) acres, the whole of which constitute the tier of sections which immediately adjoins the one last above described, and is two miles square west of that portion of said township which is embraced in the Connelly survey.
There is annexed to the record a certified copy of a map of a survey made of the aforesaid township twenty-two (22), which was by Charles Lewis, deputy United States surveyor, in October, 1893, three months subsequent to the date of Leovy’s patents, at the request of R. M. White, the plaintiff, and we make the following extract from the certificate, which is thereto appended, viz.:
“The township has an approximate area of niue hundred and sixty acres of land, exclusive of a small margin on the lots from one (1) to thirty-five (35) on the river, and the balance consists of marsh and lagoons, unfit for any use.”
• To the foregoing is appended the following statement, which serves to characterize said survey, viz.:
“I found evidences of possession by R. M. White, under his patent, in Secs. 4, 5, 6, 8 and 9, along Mercantile, Tiger, Williams, Main and Hingle passes, * * * an(j by interrogating the employees of White (ascertained) that his agents and employees have been in possession since 1890.”
*1673 All the foregoing passes are traced upon said map, but they do not appear upon any other of the maps in the record.
This map bears no evidence of same having been made contradictorily with either of the defendants, and an ex parte survey is not a recognized mode of making proof of possession of real estate, notwithstanding the register’s certificate shows that said map was deposited in his office by R. M. White, in February, 1896.
Making a comparison between this map and the patents of H. J. Leovy, it appears that Secs, four (4), seven (7), ten (10), fifteen (16), twenty-two (22), twenty-seven (27) and thirty-four (34) are intersected by Williams Pass. That Secs, four (4), five (6) , eight (8), nine (9), seventeen (17), twenty (20) and twenty-nine (29) are intersected by Main Pass. That only Sec. six (6) alone is intersected by Tiger Pass.
All of this latter series of sections were purchased by H. J. Leovy in May, 1893; and all those in the former series of sections were purchased by him in June, 1893.
To the aforesaid map of Lewis, surveyor, is appended field notes, from which we glean the following summary of the plaintiff’s claims, and the apparent conflict between them and the patents of H. J. ieovy, viz.:
Plaintiff claims five hundred and five acres in Sec. 4; defendants all. Plaintiff claims three hundred and one acres in Sec. 5; defendants all. Plaintiff claims four hundred and twenty acres in Sec. 6; defendants all. Plaintiff claims one hundred and sixty-nine acres in See. 8; defendants east one-half. Plaintiff claims one hundred and ninety-eight acres in Sec. 9; defendants all. Plaintiff claims .seventy acres in Sec. 10; defendants southwest one-quarter. Plaintiff claims two hundred and nine acres in Sec. 15; defendants west one-half. Plaintiff claims two hundred and seventy-seven acres in Sec. 17; defendants east one-half. Plaintiff claims two hundred and nine acres inSec. 20; defendants east one-half. Plaintiff claims two hundred and eighty-seven acres in Sec. 22; defendants two hundred and forty acres. Plaintiff claims two hundred and eighteen acres in Sec. 27; defendants east one-half. Plaintiff claims two hundred and twelve acres in Sec. 29; defendants east one-half. Plaintiff claims , sixty-six acres in Sec. 34; defendants northeast one-quarter.
Judging from the recitals contained in the field notes accompany *1674 ing the Lewis survey, they represent the lands which are above overflow — no portion of which are sea marsh.
The total amount of land thus situated which the plaintiff claims— taking the Lewis map and field notes as our guide — is two thousand four hundred and twenty-seven acres, and to this extent alone is an apparent conflict.
But as his Patent No. 4058 calls for three thousand eight hundred and forty acres he evidently relies upon the remainder of the aforesaid township to make out the balance of one thousand four hundred and thirteen acres, and this is found in other sections of said township, which do not in any way interfere with the defendants.
But the certificate and proees verbal of the Lewis survey show that there was, in October, 1898, when it was made, a margin of land along the front of the lots which are embraced in the aforesaid Con-nelly' survey, which was above tidal overflow, and not included therein, as will appear from the extract we have made therefrom supra.
The introduction in evidence of this map and the field notes, which were undoubtedly made by Lewis, at the request of the plaintiff, several months subsequent to the issuance of patents to Leovy for five thousand and twenty acres in said township twenty-two, would clearly indicate that the plaintiff restricts his claim to the number of acres called for by his patent; and same appears to be inconsistent with any other reasonable conclusion.
And the further inference seems equally clear that by the map and field notes of the Lewis survey the sea marsh which is indicated on all the maps of the Connelly survey was excluded therefrom ex industria, as well as the strip of land adjacent to the surveyed lots fronting the Mississippi river; and this notwithstanding the fact that the plaintiff’s patent and petition call for “all the un-surveyed sea marsh west of lots fronting on the right bank of the Mississippi river.”
There is another patent which is annexed to the record, and filed for the first time in this court as part thereof, which shows that the plaintiff, R. M. White, purchased from the State “ the east half of the northeast quarter of section number nineteen (19) in township number twenty-two (22) south, range number thirty-one (31) east, in the southeastern, west of the river, land district, parish of Plaquemines, containing eighty acres, according to the official plat *1675 of the survey of said lands in the State Land Office;” and this patent bears date of issuance March 12, 1896 — that date occurring during the pendency of this suit, which was filed on the 7th of July, 1893, and decided on the 24th of March, 1897.
This patent has its importance in determining the issues in this case, as it is identical in character of recitals with the patents which had been issued to the defendant, H. J. Leovy, three years previously ; and for the far greater reason that section nineteen, of which plaintiff thus purchased a part, is in the aforesaid township twenty-two, and the land he purchased is only one-half a square mile distant from'the land which the defendant, H. J. Leovy, purchased from the State, on May 3, 1893, under patent No. 4875, in section twenty thereof.
It appears from the parol evidence that the attention of R. M. White was attracted to the aforesaid entry while he was on the stand, as a witness, but it was then objected to by his counsel and the objection was sustained.
In the testimony of Welman Bradford, who made one of the surveys of the aforesaid township twenty-two, we find this statement, viz.:
“ That in 1889 I made a superficial examination and survey of the passes, at the instance of the estate of the late Capt. James B. Eads.”
He says he went over this township again in 1892 and 1893, at the instance of the defendant, H. J. Leovy, and is familiar with the character of the land; and he then furnishes the following description thereof, viz.:
“ The front lots on the river are dry land, for a distance of a few chains back from the river; west of that, there is a strip of sea marsh of several miles in width. In length as well as in width; beyond this are bayous and outlets, from the Mississippi river, each side of which is dry land varying in depth from one chain and more ” — that is to say, varying in depth from sixty to one hundred feet, with marsh intervening.
That witness states from an examination of the Connelly map that the distance from the northern end of the surveyed lots to the sea marsh is one-quarter of a mile; that in the centre of the township aforesaid it is one mile; and at the southern end it is one and one-half miles. He also states that there is a strip of high land lying *1676 'west of the- western limit of the sea marsh which is delineated on the Connelly map, and east of Williams’ Pass, of a mile and one-half to width.
He states that the upper boundary line of township twenty-two is hbout four miles below the Jump. The foregoing testimony is supplemented by that of H. J. Leovy of similar purport. Most of the parol evidence chiefly relates to the question of possession, pro and con, and in our opinion can exercise no influence over the question of title.
Applying the foregoing facts to the respective controversies of thei litigants, what is the just and legal conclusion to be drawn therefrom?
Plaintiff’s contention is that he acquired by his patent 4058 not only all the unsurveyed sea marsh in the aforesaid township twenty-two, but in his petition he specifies the quantity as three thousand eight hundred and forty (8840) acres, “ according to the official plat of survey in the State Land Office.”
. His petition and prayer for injunction sought to restrain the defendants from entering upon any part of the unsurveyed sea marsh in said township, and same was accordingly granted and made ■perpetual by the court below; and if its judgment is affirmed, one ■of the effects thereof will be to exclude defendants therefrom.
Not only so, but he also makes a distinct claim to all the lands in said township, which has been added thereto by accretions since the date of Connelly’s survey in 1886; those alluvial deposits having passed to the State of Louisiana by the granting act of Congress, and to him by his patent — the whole having been embraced in the Con-nelly survey prior to the formation of said alluvion.
. .Per contra, the contentions of defendants are, that under patent 4058 the defendant only acquired the unsurveyed sea marsh which was adjacent to the tier of lots fronting on the Mississippi river which were surveyed by Connelly in 1886; and that his purchase was made in accordance with that survey, and only embraced a strip of less than two miles in width, which was then situated between those surveyed lots and West Bay.
, That within a few years subsequent to the Connelly survey there ■occurred a crevasse in the west bank of the Mississippi river, at a placed called the Jump, some four miles above the northern end of the surveyed lots, and that the accumulations which were thereby *1677 occasioned on the seaward side thereof gradually raised the bed o'i West Bay, so that the whole of it became sea marsh, which in turn became connected with large bodies of swamp land to the westward thereof-. -
The defendants affirm that there is of this character of sea marsh in West Bay and in the swamp lands thereto adjacent, and within the aforesaid township, more than sixteen thousand acres, the whole'of which the plaintiff seeks to recover with his patent 4058, notwithstanding it calls for only thirty-eight hundred and forty (8840) acres of unsurveped sea marsh, according to the official plat of survey in the! State Land Office.”
That under the plaintiff’s patent calling for “all the unsurveyed marsh west of lots fronting on the right bank of the Mississippi river, except Section Sixteen in Township Twenty-two,” he makes claim' to the whole of the sea marsh which has been formed in West Bay since 1836, by means of alluvial deposits, and.also to the swamp' lands connected therewith on the westward side of the township;' And inasmuch as the entries or purchases which the defendant, H. J. Leovy, made in 1893 were of those swamp lands, the present conflict of title has arisen between the respective claimants.
It thus becomes apparent that the only defendant who has any real and actual interest in the controversy is H. J. Leovy, and that he makes no claim beyond the eastern limits of the several sections in which he made selections.
The question for decision, therefore, is whether the plaintiff acquired under his patent 4058 all the swamp lands in the western' part of said township, his contention being that the whole of said' township was sea marsh in 1836, when the Oonnelly survey was made, and that all subsequent accretions thereto passed to the State' by the granting act of Congress and to him by his patent; and the’ contention of the defendant is that these accretions passed from the government to the State, but not from the State to the plaintiff ás' patentee.
The District Judge refers in his opinion to the’ recital in plaintiff’s patent 4058 to the effect that it purports to convey'* “ all the unsurveyed marsh west of the lots fronting on the" right bank of the Mississippi river,” and remarks “ that White did not purchase by sections, and the excess, if any, has never béeñH established by any authorized survey.” He then refers to the testi *1678 mony of White to the effect that while said township has twelve or fifteen thousand acres in area, near nine-tenths thereof is water, and then asks the question: “How, then, could the State lawfuily convey by patent to defendants sections in a township whose sectional lines were never run, and which lands in said township had been previously sold to the plaintiff?”
Manifestly, the District Judge, in thus deciding, accepted the plaintiff’s theory that the term “ all the unsurveyed marsh ” included the whole area of said township west of the surveyed lots, high lands as well as sea marsh; and it is equally manifest that in thus deciding the judge wholly disregarded the further and additional recital of the patent to the effect that the area conveyed was only “ thirty-eight hundred and forty acres, according to the official plat of the survey of said lands in the State Land Office?
The judge a quo puts his opinion on the ground that neither the field notes of Oonnelly survey nor any other evidence shows that either the township or section lines had been actually run, or the entire superficial area surveyed; and concludes that there can not be an official plat of unsurveyed land, and the aforesaid phrase is altogether without significance; and that the number of acres mentioned in the patent is only an estimate of the aforesaid area.
A review of some of the foregoing facts will serve to characterize the plaintiff’s acquisition under his patent 4058.
The first which attracts attention at the outset is the character of the receipt which the register gave to the plaintiff for the sum of five hundred and thirty-four dollars; and which sum he deposited with the register for the purchase of swamp lands.
The significant facts disclosed by that receipt are (1) that it bears date August 27, L890, near three months prior to the issuance of patent 4058, and that the delay was evidently occasioned by the necessity of the register’s obtaining the advice of the Attorney General, relative to the plaintiff’s application; (2) that while White had applied for the entry of “ all the unsurveyed sea marsh in Township 22,” the patent actually conveyed to him “ all the unsurveyed marsh west of lots fronting on the right bank of the Mississippi river, excepting Sec. 16 in Township 22 * * * containing thirty-eight hundred and forty acres according to the official plat of survey of said lands in the State Land Office;” (8) that whereas White deposited five hundred and thirty-four dollars in cash *1679 with the register, as the amount presumably necessary for the consummation of the purchase he proposed, he actually employed certificate No. 2251, N. S. L., in making the purchase of three thousand eight hundred and forty acres of sea marsh, presumably at twelve and one-half cents per acre, aggregating four hundred and eighty dollars only.
The approved list of the swamp lands which were granted by Congress to the State, on file in the General Land Office at Washington, contains quite a similar description of the sea marsh in said township as that contained in patent 4058.
The field notes of Connelly’s survey were made and approved by the Surveyor General in June, 1836; and same were again examined, verified and approved on December 8, 1842.
Upon a certified sketch from the official map of the Connelly survey, which the register of the State Land Office made on June, 2 1893, about the date of Leovy’s purchase, is traced immediately in front of the portion representing the front lots, and extending the full length thereof, the following endorsements, viz.:
“ MARSH.
“Certificate No. 2251, N. S. L.
“ Robert M. White, Patent 4058, Vol. 27, p. 33.”
There is, also, indicated upon that extract, at a short distance to the westward of said lots, by a heavy red line, which is traced somewhat irregularly from north to south, what appears to be the area of the space representing the “ marsh ” which the plaintiff acquired under patent 4058, and in purchasing or locating which he used certificate No. 2251, N. S. L.; and beyond that line is traced with equal distinctness the space indicated as West Bay, accompanied by those words.
Objection was made by the plaintiff’s counsel to the introduction in evidence of that extract, on the ground that the red line thereon traced is not found upon the original map of the Connelly survey; but nonobjection was urged against the endorsement thereon.
Nevertheless, the parol evidence of Surveyor Bradford sufficiently explains the precise situation as it was in 1889, just prior to White’s purchase, and shows that there was immediately west of the surveyed lots on the Mississippi river a strip of sea marsh of several miles in width; and that beyond this are bayous and outlets *1680 from the Mississippi, on each side of which is dry land varying in width of from sixty to one hundred feet.
And the map and field notes of the survey which White caused Surveyor Lewis to make in October, 1893, fully confirms the statement. Consequently we may with safety accept the extract which the register made and furnished, as having been made in conformity with official data.
But, accepting the field notes of the Lewis survey as a fair statement of the plaintiff’s claim, it tends to establish his title to about three thousand acres of land which were above overflow in 1893, consisting in no part of sea marsh; and it is noticeable that it is this claim which comes in conflict with that of the defendant, Leovy. And the proces verbal further shows that there was, at that time, a margin of high land along the front of the lots which Oonnelly surveyed, and above tidal overflow, the area of which is not specified in the field notes of said survey, because same was expressly excepted therefrom; and it is not, in our opinion, easy to reconcile that exception with the recital of the patent 4058 to the effect that White acquired “ all the marsh west of lots fronting on the right bank of the Mississippi river in township twenty-two.” It seems inconsistent that White should have excluded that strip of high land and set up a claim to land similarly situated bub three miles further west; particularly in view of the fact that his claim to the former was as strong, if not stronger, than to the latter.
But the field notes and map of the Lewis survey very clearly indicate that the plaintiff is now urging a claim to specific number of acres of high land as being those called for by his patent, and not for all the unsurveyed sea marsh west of the surveyed lots fronting on the Mississippi river.
It further appears from said map and field notes that, on the contrary, “ all the unsurveyed sea marsh ” which is indicated on all the other maps, and particularly that of the Connelly survey, was excluded therefrom ex industria; but that same conspicuously portray all the passes, bayous and outlets in the western part of said township, in the vicinity of which the defendant’s purchases were made and to which the plaintiff makes claim.
These various claims and contentions are contradictory and conflicting in themselves, as well as the maps, plans, profiles and parol evidence which were intended to explain them. Yet, there is still *1681 another piece of documentary evidence — one which has been already adverted to — which, in our opinion, shows most clearly that the plaintiff does not feel any confidence in ■ his claim to all the sea marsh, or all the high land in the aforesaid township under his patent 4058; and that is the patent which was issued to him by the register of the land office, on the 12th of March, 1896, to a portion of section nineteen of the aforesaid township twenty-two, during the pendency of this suit.
That patent covers land which immediately adjoins that which H. J. Leovy purchased. It is identical with the patents which were issued to Leovy in the character of its recitals, concluding as it does with the phrase, viz.: “containing eighty acres according to the official plat of the survey of said lands in the State Land Office.”
It only remains for us to apply the law to the foregoing state of facts.
In our opinion it is a proposition which is too well recognized to require the citation of authority, that when several litigants trace their titles to land through a common author neither of them will be heard to gainsay or disavow the title of that author. In this case we find appropriate occasion to apply that rule, inasmuch as both the plaintiff and the defendants allege an ownership based upon patents issued by the State of Louisiana. It is therefore clear that neither party will be heard to deny that the State became the owner of the aforesaid township twenty-two by virtue of the grant of the United States government of 1849 and 1850; it is therefore unnecessary for us to investigate and determine whether there has been a formal and complete survey of said area by running out the township and section lines thereof, or not, as an incident of said grant. It is equally true that it is of no avail for the plaintiff to attempt to. defeat the defendants’ title by showing the want of such a survey, for the reason that the patent 4058 of the plaintiff, as well as of the patents of the defendant, Leovy, in terms recite that they were all issued “ according to the official plat of the survey of said lands in the State Land Office,” and for the further reason that the plaintiff has procured a similar patent for part of the land in said township during the pendency of this suit.
Under these circumstances we deem it our duty to accept the recitals of the patents of both parties, as furnishing proof that a sufficient survey was actually made of the aforesaid township to found a *1682 title in the State under the congressional grant, and to enable the-register of the land office to sell any portion thereof according to the official plat which was on ñle in his office.
We think we may fairly assume from the evidence to which we-have adverted that the register acted on the advice of the Attorney General in making the sale to White, and in issuing to him the-patent he did. And we also think that the evidence clearly shows-that the register believed he had a legal right to issue the patents he gave to the defendant in 1893; and that in so doing he acted upon the hypothesis that the plaintiff’s patent embraced a portion of the .sea marsh which fronted the surveyed lots on the Mississippi river on the east and West Bay on the west, and did not extend to or cover the high lands on the passes in the western portion of said township twenty-two.
Counsel for the defendants have cited and greatly rely upon the-opinion of this court in State vs. Buck and Pruit Company, 46 An. 656, as controlling our decision of this case; but counsel for plaintiff insist that there is a material difference between the patents which figure in the two cases, and for that reason the questions at issue are not germane, and that decision, consequently, not controlling.
That suit was an action of precisely similar character to the instant one — the State of Louisiana, as plaintiff, alleging the slander of her title under the aforesaid congressional grant by the defendants; and they in turn justifying their title under a patent from the State, and claiming thereunder a large extent of territory by virtue of alluvial deposits or accretion.
The defendants set up title as having been derived from Robert M. White — who is the plaintiff in this suit — and he in turn claimed to have derived title from 0. C. Packard, who obtained a patent therefor-in 1869.
Por the purpose of-making a more accurate illustration and application of our decision in that case to this controversy, wé reproduce, the two patents which are involved, viz.:
Copy of patent to R. M. White in this case.
The. State (Seal) of Louisiana.
Patent No. 4058.
To all to whom these presents shall come — Greeting:
Whereas, R. M. White, of the parish of Plaquemines, in the State of Louisiana, purchased per certificate No. 2251, N. S. L., Novembe *1683 10, 1890, all the unsurveyed marsh west of lots fronting on the right bank of the Mississippi, except section No., sixteen, .in township No. twenty-two south, range No. thirty-one east, in the southeastern, west of river, land district, containing three thousand eight hundred and forty acres, according to the original plat of the survey of said lands in the State Land Office.
Now know ye, that the State of Louisiana, in the consideration of the premises and in conformity with law in such cases made and provided, has given, granted and sold, and by these presents does give, grant and sell, unto the said R. M. White and to his heirs, the above described land, to have and to hold the same, together with all the rights, titles and privileges thereunto belonging, unto the said R. M. White and to his heirs and assigns forever.
In testimony whereof, ete.
Copy of patent in case of State vs. P. T. Fruit Company, 46 An. p. 657:
The State of Louisiana.
Patent No. 526.
To all to whom these presents shall come — Greeting:
Whereas, C. C. Packard, of the parish of Orleans, in the State of Louisiana, purchased, per warrant No. 380, N. S. D., dated September 29, 1869, the following described swamp land, subject to tidal overflow, to-wit: All the unsurveyed sea marsh in township 21 S., ranges 30 and 81 E., in the Southeastern Land District of Louisiana, west of the Mississippi river, excepting lots fronting on the river, and Secs. 16 in both ranges, containing thirteen hundred and twenty acres, extending back to West.Bay, according to the official plat of the survey of said lands in the State Land Office.
Now know ye, that the State of Louisiana, in the consideration of the premises, and in conformity with law in such cases made and provided, has given, granted and sold, and by these presents doth give, grant and sell, unto the said 0. O. Packard and to his heirs, the above described land, to have and to hold the same, together with all the rights, titles and privileges thereunto belonging, unto the said O. O. Packard and to his heirs and assigns forever.
We also reproduce an exemplification of the map of the Oonnelly survey of the aforesaid township_ twenty-two, which adjoins that in which the Buck purchase was made, viz.:

*1684

A comparison made between the two patents show them to be practically identical, the only material difference between them being the words “ extending back to West Bay,” that phrase having been omitted from patent 4058 to White. But the map shows that the locus in quo is very much the same.
One of the principal questions decided in the Buck case was that the sale to Buck was not one per aversionem, but one by measure; and upon the determination of that question depended the claim of the defendants to alluvial accretions which had formed in West Bay, aggregating about thirty thousand acres in area.
*1685 On that question we said in the Buck case:
“It certainly can not be said that the boundaries given were, in any proper sense, certain limits, definitely fixed. The patent issued to Packard did not convey all the land between two adjoining tenements; and it is oí no consequence that reference is had to the township and ranges in which the land is situated, because they are mathematically fixed, established and well-known limits. The salé was made of all the unsurveyed sea marsh in township twenty-one south, with certain exceptions, containing thirteen hundred and twenty (1820) acres; and which, according to the official plat in the land office, extended back to West Bay, as it once existed.
“This is evidently a sale by measure. Considering the fact that it was a sale, or entry of public land — property of the State of Louisiana — made by a public official in pursuauce of special laws governing their alienation, how could- it be a sale per aversionem?
“ But the register sold thirteen hundred and twenty acres of land at twenty-five cents per acre, and that is the quantity the patent conveyed to Packard, and no more. Consequently, the claims of defendants must be restricted to the calls of the patent, unless they have been extended, or increased by accretion.” (Our italics.)
In treating of the question of Buck’s title to the accretion which had been formed on the front of the land he purchased from the State under patent 526, which was issued in 1869 to Packard, we made quite an elaborate statement of the evidence, which need not be repeated here, but we regard it quite pertinent to this case to state the conclusions which we deduced therefrom. They are as follows, viz.:
“ Taking the testimony of this witness [E. L. Corthell] as our guide, and we think it but fair that we should do so, it appears evident that the alluvial deposits he describes gave greatest elevation to the lands in question during the series of years immediately succeeding 1836, the year during which the crevasse occurred, and consequently there must have been a large area of land raised above inundation as well as tidal overflow, at date patent issued to Packard in 1869 — more than thirty years subsequently.
“The precise condition of things existing at date of issuing patent is not clearly ascertainable from the evidence, but it is quite apparent that such elevated area must have extended much beyond the limits of the tract conveyed to Packard, taking the surveyed lots on the river front as the initial point of calculation. ” (Our italics.)
*1686 “And, presumably the register of the land office was aware of the status of the sea marsh in that locality, and issued his warrant of location, as well as the patent, conformably thereto.
“ Accepting this as the true situation of the land conveyed by the patent, it is quite manifest that it did not constitute a riparious estate, in the sense of the civil law, to which the described accretions attached ” —citing the authorities.
Applying the principles of that decision to the instant case, they seem to our minds to have a stronger application to this case in two particulars, (1) that if a sale of public lands as all the unsurveyed sea marsh in a given township which extended back to West Bay was a sale by measure of the specified number of acres, a sale of all the unsurveyed sea marsh in a township without any western boundary must be likewise a sale by measure of a specified number of acres also; (2) that if the formation of accretion by alluvial deposits made in West Bay was so great antecedent to 1869 as to have defeated the claim of Packard and his assignees thereto, for so much the greater reason must we hold that White has no claim to accretion under his patent 4058, which was issued in 1890 — twenty years subsequently to the issuance of Packard’s patent.
There is one point which particularly impresses our minds, as it did in he Buck case, and that is the definite boundary on the east of the land sold, which each of the said two patents establishes and from which the specified measure must be taken.
In the Packard patent the recital is, viz.:
“ All the unsurveyed sea marsh in township twenty-one * * * except lots fronting on the river.”
In the White patent the recital is, viz.:
‘ ‘ All the unsurveyed marsh west of lots fronting on the right bank of the Mississippi(Our italics.)
Thus it is shown that the evidence in the instant case is stronger and more explicit on this point than that in the Buck case, and as in the Buck case we held it to have been a fact established by the patent that the surveyed lots fronting on the Mississippi river were to be taken as the initial point in calculating the area of land which was thereby actually .conveyed, for so much the greater reason must said front lots be taken as such initial point of calculation in the instant case, for the reason that patent 4058 fixes said lots as the eastern boundary of the marsh it conveys.
*1687 Upon this theory White has taken an improper starting for the ascertainment of the land which is called for by his patent, as we construe the sale to him as one made by measure of a definite fixed quantity of marsh land, the eastern boundary of which is the surveyed lots which are described in the Connelly survey.
Counsel for the plaintiff relies very much upon the statute of 1880 as justifying his claim to the whole of the aforesaid township twenty-two, on the ground that same was sea marsh when he bought it in 1890, and the District Judge cites section eleven thereof in his opinion.
But we are quite confident that the language of that act does' not justify the conclusion that has been thus drawn therefrom.
It is of the following tenor, viz.:
“ That the public lands donated by Congress to the State of Louisiana, designated as sea marsh, or prairie, subject to tidal overflow, so as to render them unfit for settlement and cultivation, shall be subject to entry and sale at the rate of twelve and a half cents per aere,” etc. (Our italics.) Section 11 of Act 75 of 1880.
In our opinion that section of the statute authorized the register to make a sale of the sea marsh by measure only; and we think the language of the preceding section makes this construction of section eleven perfectly clear.
It is as follows, viz.:
“That the public lands donated by Congress to the State of Louisiana shall be subject to sale and entry at the rate of seventy-five cents per acre, for any number of acres,” etc. (Our italics.) Section 10, Id,
The declaration in each section is just the same: that the sea marsh shall be subject to entry and sale, and that the public lands shall be subject to sale and entry.
Therefore, there is no stronger justification for the claim, that the register was authorized to sell sea marsh without any reference to measure or quantity, than there would be that he was thus authorized to make sale of the swamp lands which are above tidal overflow. And we do not consider it a material circumstance that in patent 4058 the register did not specify any particular sections, or designate any particular boundary other than the front of the surveyed lots on the Mississippi river.
In the well-considered case of Harden vs. Jordan, 140 U. S. 371, the Supreme Court, upon a review of adjudicated cases, announced ■the rule of jurisprudence to be that grants by the United States of its *1688 public lands bounded on streams and other water courses, made without reservation or restriction, are to be construed, as to their effect, according to the law of the State in which the lands lie— especially in cases where the boundaries are streams of fresh water. Manchester vs. Massachusetts, 139 U. S. 240; Barney vs. Keokuk, 94 U. S. 324; Packer vs. Bird, 137 U. S. 661.
It has been for a great many years the well-established course of decision in this State, founded upon the principles'of the civil law and the precepts of our Code, that “title by alluvion is a purely accessory right, attaching exclusively to riparian proprietorship and incapable of existing without it.”
In other words, the essential thing first to be done is that the purchaser shall acquire a title to a riparian estate — that is, one actually bordering upon a water course — and the accretions which are sue - cessively and imperceptibly added thereto afterward “are called alluvion.” R. C. C. 509; Succession of Delachaise vs. Maginnis, 44 An. 1043; Stephenson vs. Goff, 10 R. 99.
These principles were applied to this particular territory by this court in Buras vs. O’Brien, 42 An. 528, speaking through Mr. Justice Fenner as its organ, from which we extract the following, viz.:
“Plaintiff’s claim of title by accession resulting from accretion seems to us equally unfounded.
“ The evidence shows that after the Mississippi river found a new channel through what is called the Jump, this land was formed by deposits from its overflow, as an island in West Bay. Between the waters of West Bay and the southern line of plaintiff’s sections, as established by the field notes of Connelly, there was a stretch of sea marsh, which was ceded by the United States to the State of Louisiana under an act of Congress in 1849. Therefore, the State, and not the plaintiff, was riparian proprietor on West Bay, and no accretion there formed could benefit plaintiff. Nor were the plaintiffs riparian proprietors on the Jump in front of this land.”
As, in our opinion, this controversy is quite similar to the one presented in Buras vs. O’Brien—that is to say, one for the determination of the area of sea marsh which is covered by a State patent— our conclusion is that the plaintiff’s patent 4058 does not extend to nor include the land which is called for by the patents which were subsequently issued by the State to the defendant, H. J. Leovy, and that, consequently, there is no conflict between them.
Under the jurisprudence and statutes of this State governing the *1689 sale and entry of swamp and marsh lands, we think it our duty to consider all the provisions and recitals of patents issued therefor and to give same effect according to their tenor, and thus considering the patent of the plaintiff, we regard it as evidencing a sale by measure, and not by estimation of quantity. We consider the words thereof, “ containing three thousand eight hundred and forty acres,” as limiting the words preceding, “all the unsurveyed marsh west of lots fronting on the right bank of the Mississippi,” and that the reference made therein to “ the official plat of the survey of said lands in the State Land Office ” was intended to verify and confirm the statement as to the character and extent of the area of land which was actually conveyed to the patentee.
We are of the opinion that inasmuch as the plaintiff’s patent 4058 calls for “all the unsurveyed marsh west of lots fronting on the Mississippi, except section sisteen, in township twenty-two,” he is not entitled to survey, select and appropriate all the-dry land, or wamp land above overflow, in said township in order to make out the quantity of “ 3840 acres ” he purchased.
We are of opinion that inasmuch as the patent conveys “ all the unsurveyed marsh west of the lots fronting on the Mississippi,” ® those lots must be taken as the initial point from which the area is to be computed — same being the only fixed and definite boundary mentioned in the patent.
Thus considering the law and the evidence, we are of opinion that there should be judgment in favor of the defendant, H. J. Leovy, maintaining his patents as reflecting the paramount title to the lands which are therein described, and perpetuating his writ of injunction.
But we do not regard this as a proper case for the allowance of vindictive or-punitory damages; and on account of the paucity of proof of actual and compensatory damages, if any, we prefer to dismiss that claim as of non-suit.
It is therefore ordered, adjudged and decreed that the judgment appealed from be annulled and reversed; and it is further ordered and decreed that the demands of the plaintiff be rejected, and that the title of the defendant be maintained and his injunction perpetuated, and that all costs be taxed against the plaintiff. In other respects let there be a judgment of non-suit.
The Ohief Justice not having heard the argument in this case takes no part in this opinion.