**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Edward M. CLARIDGE and Kay T. Claridge, his wife, et al.**

**and**

**State of Arizona ex rel. Obed M. Lassen, Defendants-Appellants.**

**No. 22312.**

United States Court of Appeals
Ninth Circuit.

Sept. 19, 1969.

**934**

Robert A. Stafford (argued), Claremont, Cal., Dale R. Shumway, (argued), Special Asst. Atty. Gen., Darrell F. Smith, Atty. Gen., Richard F. Harless, Phoenix, Ariz., for defendants-appellants.

Edmund B. Clark (argued), Clyde O. Martz, Asst. Atty. Gen., Glen E. Taylor, Roger P. Marquis, Attys., Dept. of Justice, Washington, D. C., Richard K. Burke, U. S. Atty., Richard S. Allemann, Asst. U. S. Atty., Phoenix, Ariz., for plaintiff-appellee.

Before MERRILL and ELY, Circuit Judges, and KILKENNY, District Judge.*

PER CURIAM:

This action was instituted by the United States to quiet title to lands located on the Arizona side of the Colorado River in the Palo Verde Valley. Judgment of the District Court was rendered in favor of the United States. 279 F.Supp. 87 (D.Ariz.1967). From that judgment the defendants and the State of Arizona, as intervenor, have appealed. They assert that the lands in question are not in the public domain but that title thereto passed to the State of Arizona upon its becoming a state in 1912. They contend that at that time the lands were in the bed of the Colorado River [1] and remained there until the construction of Hoover Dam in 1935 reduced the width of the river.

The facts are fully stated in the opinion of the District Court. For the purposes of this appeal it is sufficient to state that appellants' theory is founded on the mistaken assumption that the annual spring floods of the river (suffered prior to the advent of Hoover Dam), which covered the valley from bluff to bluff, constituted its "ordinary high water" and that the valley, from bluff to bluff, thus constituted the bed of the river. By eliminating these floods, appellants contend, the Hoover Dam caused an avulsive change in the flow of the river so that the United States as riparian owner did not take title to the flood plain.

Appellants' definition of "ordinary high water mark" is unsound. The District Court concluded, and we agree:

"The ordinary high water mark of a river is a natural physical characteristic placed upon the lands by the action of the river. It is placed there, as the name implies, from the ordinary flow of the river and does not extend to the peak flow or flood stage so as to include overflow on the flood plain, nor is it confined to the lowest stages of the river flow." 279 F.Supp. at 91.

This is in accord with holdings of the Supreme Court. Oklahoma v. Texas, 260 U.S. 606, 635, 43 S.Ct. 221, 67 L.Ed. 428 (1923); Alabama v. Georgia, 64 U.S. (23 How.) 505, 515, 16 L.Ed. 556 (1859); Howard v. Ingersoll, 54 U.S. (13 How.) 381, 415, 14 L.Ed. 189 (1851).

The District Court was therefore not in error in ruling that a precise location of the high water mark at the time of Arizona's statehood was unnecessary. While the river unquestionably has meandered through the valley since that

---

\* Honorable John F. Kilkenny, United States District Judge for the District of Oregon, sitting by designation.

1. Confirming prior case law, the Submerged Lands Act of 1953, 67 Stat. 29, 43 U.S.C. § 1301(a) (1), in effect quitclaims to the states " * * * all lands

\* \* \* covered by nontidal waters that were navigable under the laws of the United States at the time such State became a member of the Union, * * * up to the ordinary high water mark as heretofore or hereafter modified by accretion, erosion, and reliction * * *."

time, any change in its course has resulted from gradual erosion and not from avulsion, and the resulting accretion passes to the United States as riparian owner. Whether the Hoover Dam affected the course of the river is of no significance, for it did not result in avulsive changes and it was not constructed for the purpose of reducing riverbed holdings. 43 U.S.C. § 617. As this court stated in Beaver v. United States, 350 F.2d 4, 11 (9th Cir. 1965), cert. denied, 383 U.S. 937, 86 S.Ct. 1067, 15 L.Ed.2d 854 (1966):

> "The erecting of artificial structures does not alter the application of the accretion doctrine * * * unless, perhaps, structures are erected for the specific purpose of causing the accretion."

For the reasons set forth in the opinion of the District Court, judgment is affirmed.