**UNITED STATES of America,**
**Plaintiff—Appellee,**

v.

**John F APPEL, Defendant—Appellant.**

No. 02–57182.

D.C. No. CV–94–07824–LGB.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 2, 2004.

Decided Feb. 19, 2004.

Todd Aagaard, Martin F. McDermott, Attorney, U.S. Department of Justice, Washington, DC, Kristine Blackwood, Office of the U.S. Attorney, Los Angeles, CA, for Plaintiff–Appellee.

Kate M. Neiswender, Law Offices of K.M. Neiswender, Ventura, CA, for Defendant–Appellant.

Before BROWNING, REINHARDT, and WARDLAW, Circuit Judges.

MEMORANDUM *

F. John Appel appeals the district court's judgment approving the ordinary high water mark methodology used by the Environmental Protection Agency ("EPA") to set the jurisdictional boundaries, under the Clean Water Act, of the Ventura River as it traverses his property. *See* 33 U.S.C. §§ 1311(a), 1362(7); 33 C.F.R. §§ 328.3(e), 328.4(c). We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

*A. Flood Flows and the Lateral Extent of the River*

The district court did not err in fixing the jurisdictional boundaries of the Ventura River ("the River"). Under EPA regulations, federal jurisdiction over non-tidal waters, in the absence of adjacent wet-

lands, extends to the ordinary high water mark ("OHWM"). 33 C.F.R. § 328.4(c)(1). The OHWM is:

> that line on the shore established by the fluctuations of water and indicated by physical characteristics such as clear, natural line impressed on the bank, shelving, changes in the character of soil, destruction of terrestrial vegetation, the presence of litter and debris, or other appropriate means that consider the characteristics of the surrounding areas.

33 C.F.R. § 328.3(e). It "is placed there, as the name implies, from the ordinary flow of the river and does not extend to the peak flow or flood stage so as to include overflow on the flood plain...." *United States v. Claridge*, 416 F.2d 933, 934 (9th Cir.1969).

Contrary to Appel's assertions, the district court did not rely upon "flood flows" in making its OHWM determination. Rather, the court based its assessment on the ordinary high flows of the River resulting in "frequent and prolonged inundation," and explicitly excluded evidence from extraordinary flood events. Having correctly omitted flood events from its determination, the district court committed no error of law. *See id.; Howard v. Ingersoll*, 54 U.S. 381, 416, 13 How. 381, 14 L.Ed. 189 (1851).

Nor did the district court erroneously extend the River's jurisdictional boundaries to include the "lateral extent" of areas that "look and function like a river." Viewing the district court's Findings of Fact and Conclusions of Law as a whole, it is clear that the court did not improperly expand the reach of the OHWM. Rather, the court simply sanctioned a field observation methodology identical to the one

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

approved by the EPA, *see* 33 C.F.R. § 328.3(e), by the Supreme Court, *see Ingersoll*, 54 U.S. at 416, and by us, *see United States v. Washington*, 294 F.2d 830, 834 (9th Cir.1961). Its reliance on this methodology was not erroneous.

### B. Ordinary High Water Mark Determination

Determinations of the OHWM are generally made through physical observation of the land. *See id.*; 33 C.F.R. § 328.3(e). The OHWM is "a natural physical characteristic placed upon the lands by the action of the river," *Claridge*, 416 F.2d at 934, that is "ascertained by inspection...." *Ingersoll*, 54 U.S. at 417. In determining the OHWM, "what courts have been interested in is evidence, such as a change in terrestrial vegetation, indicating the relatively permanent elevation of the water." *United States v. Harrell*, 926 F.2d 1036, 1042–43 (11th Cir.1991).

The field observations approved and adopted by the district court faithfully adhere to this precedent. The government's expert witness personally observed the physical features of the River through field study, aerial photographs, and soil samples. Given the exhaustive evidence supporting its conclusion, it cannot be said that the district court clearly erred in determining the OHWM for the portion of the River that traverses Appel's property.

### C. Expert Testimony

Where, as here, "a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error." *Anderson v. City of Bessemer City*, 470 U.S. 564, 575, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). The district court found that Appel's expert "lacked credibility and was unconvincing in various respects," and credited the testimony of the EPA's experts. Viewing the record "in light of the appropriately deferential standard, it is apparent that it contains nothing that mandates a finding that the District Court's conclusion was clearly erroneous."[1] *Id.* at 577.

### D. Alternative Wetlands Approach

The district court did not err in relying upon the OHWM, rather than the wetlands approach, to determine the River's jurisdictional boundaries. Jurisdictional determinations of non-tidal waters under the Clean Water Act ("CWA") may be based on either (1) the ordinary high water mark or (2) the limit of any wetlands. *See* 33 C.F.R. § 328.4(c).

While it is true that the government initially set out to delineate the extent of the wetlands on Appel's property, this effort failed because Appel had bulldozed most of the area near the River on his parcel, rendering any wetlands indiscernible. As a consequence, the government altered its approach and endeavored to fix the jurisdictional boundaries of the River via the ordinary high water mark method.

Nothing in the CWA or its implementing regulations suggests that the government is locked into its initial, pre-inspection impression of a jurisdictional water. The

---

1. Even were it true, as Appel argues, that the district court lacked factual support for rejecting *his* expert's testimony, he still fails to demonstrate that the *government's* expert testified contrary to the evidence. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.* at 574. Because the evidence supports the government's interpretation, the court did not clearly err by rejecting the one proffered by Appel.

more rational approach, and the one contemplated by the CWA, is that the government must eventually settle upon a single methodology, and the district court must determine whether it is supported by the evidence. *See* 33 C.F.R. §§ 328.4(c), 328.3. Because that is what occurred in this case, we find no error.

**AFFIRMED**